**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


SAMUEL DAVIS, JR.,

v.                                                    Case No. 8:04-cr-546-T-24TGW
                                                               8:07-cv-1961-T-24TGW

UNITED STATES OF AMERICA,

_____/

## ORDER

This cause is before the Court upon Defendant Samuel Davis, Jr.'s ("Davis")

Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255[1]

(CV Dkt. 8; CR. Dkt. 72)[2], the United States's ("Government") Response in Opposition (CV

Dkt. 13), and Davis's reply thereto (CV Dkt. 16).

## Background

Davis was charged in a one count indictment with being a felon in possession of a

firearm.  (CR Dkt. 11).  Before trial, Davis filed a motion to suppress evidence and a motion

to dismiss the indictment.  (CR Dkts. 22, 23).  The Court denied both motions.  (CR Dkts.

---

[1] Davis signed his original Motion to Vacate, Set Aside or Correct Sentence on October 25, 2007. The Court received and docketed Davis's motion on October 29, 2007.  (CV Dkt. 1).  By order entered on October 31, 2007, the Court denied Davis's motion without prejudice and directed him to file an amended motion containing a brief statement of facts supporting each of his claims.  (CV Dkt. 5).  On January 7, 2008, the Court received Davis's amended motion to vacate.  (CV Dkt. 8).

[2] For purposes of this Order, references to the docket in the underlying criminal case, 8:04-cr-546-T-24TGW, are designated as "CR Dkt. __."  References to the docket in the instant civil case are designated as "CV Dkt. __."

30, 32).  Following a bench trial[3] on February 17, 2005, Davis was convicted.  (CR Dkt. 36).

Davis was sentenced to 235 months of imprisonment followed by 60 months of supervised

release.  (CR Dkt. 46).  On appeal, the United States Court of Appeals for the Eleventh

Circuit affirmed Davis's conviction and sentence on March 29, 2006.  (CR Dkt. 65; *United*

*States v. Davis*, 175 Fed.Appx. 286  (11th Cir. 2006), *cert. denied*, 127 S.Ct. 537 (2006)).

The Eleventh Circuit denied Davis's motions for rehearing and rehearing *en banc*.  *See*

*United States v. Davis*, 186 Fed.Appx. 984 (11th Cir. 2006) [Table].  The mandate issued

on June 29, 2006.  On October 30, 2006, the United States Supreme Court denied Davis's

petition for the writ of certiorari.  (CR Dkt. 66).[4]

## Standard of Review

Title 28, United States Code, Section 2255 provides the framework for reviewing a

federal prisoner's sentence under four circumstances: (1) the sentence was imposed in

violation of the Constitution or laws of the United States; (2) the court was without

jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum

authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C.

§ 2255.  Collateral relief under Section 2255 "is reserved for transgressions of constitutional

rights and for that narrow compass of other injury that could have been raised on direct

appeal and would, if condoned, result in a complete miscarriage of justice."  *Richards v.*

*United States*, 837 F.2d 965, 966 (11th Cir. 1988).  Generally, only constitutional claims,

jurisdictional claims and claims of error so fundamental as to have resulted in a complete

---

[3] On the morning of trial, defense counsel and the Government stipulated that the evidence adduced at the suppression hearing would be used as part of the Government's case in chief.  (CR Dkt. 58, pp. 6-7).

[4] *See also* Supreme Court online docket at:  http://www.supremecourtus.gov/docket/06-6840.htm.

miscarriage of justice are cognizable in a Section 2255 motion for relief.  *See United States*

*v. Addonizio*, 442 U.S. 178, 184-86 (1979).

In the instant amended motion to vacate, Davis raises the following claims for relief:

(1)     trial counsel rendered ineffective assistance by misadvising Davis to proceed to a partially stipulated bench trial with the guarantee that Davis would receive a two-level reduction at sentencing for his acceptance of responsibility;

(2)     trial counsel rendered ineffective assistance by terminating Davis's presentence investigation interview while knowing that Davis sought a two-level reduction for acceptance of responsibility and without informing Davis that she [counsel] was acting in a manner inconsistent with Davis's interests; and

(3)     trial counsel rendered ineffective assistance by failing to facilitate Davis's limited cooperation with interested law enforcement authorities.

(CV Dkt. 8).

## Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment protects a defendant's right to the effective assistance of

counsel during criminal proceedings against him.  *Strickland v. Washington*, 466 U.S. 668

(1984), governs an ineffective assistance of counsel claim:

The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.    Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Davis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that

4

reasonable professional judgments support the limitations on investigation." *Strickland v.*

*Washington*, 466 U.S. at 690-91.  Davis cannot meet his burden merely by showing that

the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United*

*States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in

every case, could have done something more or something different.  So, omissions are

inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but

only what is constitutionally compelled.' ") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S.

776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no

duty to raise frivolous claims).

## Discussion

A review of the record demonstrates that, for the reasons stated herein, Davis's

motion to vacate must be DENIED.

## Ground One

Davis presents three sub-claims for relief in Ground One:

CLAIM A

Davis alleges that trial counsel misadvised him to proceed to a bench trial with the

guarantee that Davis would receive a two-level reduction in his offense level at sentencing

for his acceptance of responsibility.  Davis alleges that after the denial of his suppression

motion and the Government's refusal to allow him to enter a conditional plea, trial counsel assured Davis that he would be entitled to the "acceptance of responsibility reduction" if he proceeded to a bench trial.  Davis further claims that trial counsel advised him that he would receive the same sentence as if he had pled guilty, "but with the added benefit of receiving appellate review of the suppression and interstate commerce issues."[5]  Davis contends that absent this erroneous advice by trial counsel, he would have pled guilty and received the two-level reduction.

Even assuming, *arguendo*, that trial counsel failed to properly advise Davis of the potential advantages of pleading guilty under the Federal Sentencing Guidelines and that the failure rose to the level of deficient performance, Davis fails to show resulting prejudice. To establish prejudice, Davis must demonstrate that, but for trial counsel's failure to properly advise him of the advantages of pleading guilty and foregoing a trial, a reasonable probability exists that he would have pleaded guilty and received the two-level reduction for acceptance of responsibility.  After reviewing the record, the Court finds that no such probability exists.

 The United States Sentencing Guidelines provide for a two-level reduction of the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a).  Considerations for determining whether a defendant qualifies for the reduction based on his acceptance of responsibility include:

(a)  truthfully admitting the conduct comprising the offense of conviction;

---

[5]  Davis, through counsel, argued at trial that the Government failed to prove that the firearm in question bore a substantial nexus to interstate commerce or that the possession of the firearm itself affected interstate commerce.  (CR Dkt. 58, p. 21).

(b)  voluntary termination or withdrawal from criminal conduct or associations;

. . .

(d)   voluntary surrender to authorities promptly after commission of the offense;

(e)   voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

. . .

(h)  the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1(a), cmt. n. 1(a, b, d, e, h).

Davis fails to present any evidence of entitlement to the reduction for acceptance of responsibility.  At sentencing, trial counsel argued for the reduction on Davis's behalf. The Court denied Davis a downward adjustment for acceptance of responsibility after considering counsels' argument, Davis's testimony and the appropriate sentencing guidelines and commentary thereto:

Court:              Okay.

                    [Defense counsel], as I recall - - and I did have the opportunity to read - - what went on at the motion to suppress, and I think that's where most of it happened, he agreed to waive his right to a jury trial, and he offered to plead guilty in a conditional plea reserving the right to appeal my ruling on the motion to suppress

and I suppose the motion to dismiss.[6]

[The prosecutor] said his office - - or he would not concur with that, and therefore he waived his right to a jury trial, and the agreement at the motion to suppress hearing was to proceed with a non-jury trial.

And then, as I recall - - and please feel free to correct me - - as I recall, on the morning of the non-jury trial there was an agreement that you would rely on the facts as they had been presented at the motion to suppress hearing.

Counsel:            That is correct, Your Honor.

Prosecutor:         That is correct, Your Honor.

. . .

Court:              When was it that there was an agreement, or when was the discussion - - I know it was held at the motion to suppress hearing, but I'm wondering if it was held between [the State and defense counsel] earlier - - regarding his desire to plead guilty and reserving his right to appeal my ruling on the motion to suppress and the motion to dismiss, I suppose, but - - I'd have to think about that, about the motion to dismiss, but the motion to suppress, anyway - - when was that discussion?

---

[6] Before trial, Davis moved to suppress evidence and to dismiss the indictment, alleging that 18 U.S.C. § 922(g), the statute under which Davis was charged, violated the Commerce Clause.  (CR Dkt. 44).

| | |
|---|---|
| Prosecutor: | My recollection - - and we may have talked the night before or we talked that morning - - but of course we didn't know what the Court was going to do. |
| Court: | Okay. |
| Prosecutor: | So the United States had to be prepared to proceed with a full bench trial, uh, if the Court had not agreed to accept our stipulation to let the suppression evidence portion of the case come in as the Government's case in chief. |
| | So, we had to be prepared to proceed with a full bench trial, Your Honor. |
| Counsel: | If I may, Your Honor, my recollection is actually slightly different - - |
| Court: | All right. |
| Counsel: | - - and I'd like to attack two aspects of that question because I'm not sure what the Court was focusing on. |
| Court: | Well, yes, I was looking at more - - I know we discussed the motion to suppress. I was looking at whether you all discussed it prior to the motion to suppress. |
| Counsel: | I - - it was always my intent to proceed the way that we did, and I hope that I expressed that to [the prosecutor]. I do recall at a status conference discussing the possibility of a conditional plea - - |
| Court: | I do too. |

9

Counsel:          - - which [the prosecutor] would then, I guess, have had to take back to his office. It was always our hope to alleviate the need for a trial in this case.

Uh, Mr. Davis has never had any dispute that he was guilty of the essential elements of the offense. The only question was his desire to pursue a motion to suppress and to preserve his right to appeal the constitutional ruling, uh, which is why I - - I do believe he should be entitled to acceptance of responsibility.

Uh, the bench trial, to my recollection, took approximately 45 minutes at the outside. I was - - I was back in the office an hour after it began. It - - it wasn't a change of plea, uh, it wasn't technically an admission of guilt, but certainly by proceeding in the abbreviated manner that he did, uh, Mr. Davis manifested his acceptance of his acknowledgment of his guilt, acceptance of responsibility for his offense, and he alleviated the expense of calling a jury, the burden of a trial that might have lasted two or three days.

Uh, and I do believe that - - I know the Court has read my sentencing memorandum, but both the commentary to 3E1.1 and the case law supports the award of acceptance in this case.

Court:            I don't think I quite agree with that. Let's go through that, and you tell me where you think that might be the case. So - - and let me just

make sure again that there is no dispute as to the - - as to the facts involved in this case.

In the motion to suppress hearing, Mr. - - or the law enforcement officers testified - - and when asked about is that a firearm in your pocket?  And he said that was a pill bottle.  They testified that he denied the ID as being his ID. They testified that when they tried to arrest him, he resisted very violently.

Now, is there any - - and he - - he didn't say anything, so that's the only evidence that I have.  So, I've got to assume that those are the facts that I should consider for purposes of whether he's accepting responsibility.

I've never heard Mr. Davis say much of anything.  So, I don't know, he's never - - you've said now that he admits that he was a convicted felon, and he did all along, and I don't think that's an issue, that he was possess - - but now that he's possessing the firearm in question, and that he knew it was unlawful for him to be in possession.

But let me just ask about all those other little peripheral issues that the law enforcement officers testified to.  Is there any dispute that the testimony that this Court heard was that he said that when asked about is that a firearm, that he said that was pill bottle?

|  | Number two, that when asked about the ID, he denied that that was his ID? |
|--|--|

And three, he essentially resisted when they tried to arrest him?

Counsel:       Your Honor, uh, with respect to the first question, the pill bottle, there's no dispute that he said that. Mr. Davis also had a pill bottle in a pocket, and I think it was probably his hope at the time to deflect the officer's attention to the pill bottle. But there's no dispute that that's what he said.

Court:         All right.

Counsel:       With respect to the ID, uh, I believe there was evidence that he told them that was an ID for his friend, and he kept flipping through his wallet, and that was the point in time when the officer testified he saw the gun.

The third question with resisting, there is no dispute to that.

Court:         Okay. And the reason I'm bringing this up, if I look at the commentary - - and frankly, I was looking at another book back in my office, which I marked, and this one isn't marked, and it's going to take me just a minute to go to what I wanted to find, so just bear with me a moment.

In determining whether a defendant qualifies under Subsection A, appropriate considerations include but are not limited to the following: Truthfully

admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any of the relevant conduct for which the defendant is accountable.   Note that a defendant is not required to volunteer or affirmatively admit relevant conduct beyond the offense of conviction in order to obtain a reduction under Subsection A.

A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under the subsection.

You know, remaining silent about the firearm being stolen, and maybe lying about it are - - are troubling, but - - however, a defendant who falsely denies or frivolously contests the relevant conduct that the Court determines to be true acted in a manner inconsistent with acceptance of responsibility.

That was - - that's one issue.

Now, let me run through the others that the application note suggests that I look at.

D. 1D says: Voluntarily surrenders to authority promptly after the commission of the offense.  Well, certainly he did not do that.

Voluntarily assisting - - assistance to the authority in recovery of the fruits and the instrumentalities of the offense.  I - - I would - - I would

find a problem with that in light of the fact that he's said he had a pill bottle instead of a gun.

Voluntarily - - voluntary resignation from the offense or position held during the commission of the offense - - I'm not sure what that means.

Post-rehabilitative efforts - - I haven't heard anything about that.

The timeliness of the defendant's conduct in manifesting acceptance of responsibility.  That seems to have occurred after - - at the Presentence Report stage sometime.

And then - - so, if I look at all of those, they don't exactly point toward his getting acceptance of responsibility.

Now, I realize that there are other things, and since I'm reading the notes that are appropriate, let me go ahead and read those.

The adjustment is not intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.

Well, I don't know anything about remorse, but at this point [the prosecutor] has said that he did bring witnesses in on the morning of trial, and we did rely on what was - - what the witnesses testified to in the motion to suppress, but at

14

that point he was still denying the essential elements of his guilt.

Conviction by a trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.

This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt.   For example, making a constitutional challenge to a statute, or a challenge to the applicability of the statute to his conduct.

In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily on pretrial statements and conduct.

And I'm not sure that I need to read any more of this. . . .

But, you know, I am troubled by, quote, his - - his pretrial conduct as far as acceptance of responsibility under the circumstances, not to mention the fact that I'm not sure that the elements of this were admitted to until such time as we got ready for sentencing.

But, you know, with that said, you know, I - - [defense counsel], I'll let you point out what you want me to look at, if there's something I'm missing here.

15

Counsel:            Thank you, Your Honor.   Uh, I
                    think there are two key points here.
                    First, the  -  -  the acceptance
                    provisions clearly state that a
                    defendant may go to trial to
                    challenge a statute or challenge
                    the applica [sic]  -  -  make a
                    constitutional challenge to a
                    statute, or challenge the
                    applicability of a statute to his
                    conduct and deserve acceptance.

                    That provides - - that applies even
                    in a case where the defendant has
                    a full jury trial, puts the
                    Government to its burden of proof
                    on each and every element, uh,
                    and  -  -  and requires the jury to
                    make a determination of - - of guilt
                    or innocence.

                    I think that clearly applies if we had
                    only raised the commerce clause
                    challenge in this case.   I would
                    think that provision would clearly
                    apply.   Otherwise - - as I'll get to in
                    a moment  -  -  I think you have a
                    significant due process problem.

                    Uh, so what  -  -  what I see the
                    issue here today is whether by
                    having the suppression motion Mr.
                    Davis has essentially lost
                    acceptance of responsibility.     I
                    think there's no doubt, uh, even
                    though he didn't accept
                    responsibility immediately upon his
                    arrest.

                    Uh, however, if he had come in
                    and pled guilty, uh, routinely we
                    see this happen with - - with
                    defendants who maybe resist a
                    little bit, or don't come forward
                    straight away the night of the

16

|                | arrest, give a false statement - - come into court, plead guilty, and they get the reduction for acceptance of responsibility. |
|----------------|-------------------------------------------------------------------------------------------------------------------------------|
|                | I think that if Mr. Davis had pled guilty, we wouldn't be having this discussion here today. |
| Court:         | No, no doubt about it. |
| Counsel:       | So, I - - I honestly think that what the issue is, is whether or not his conduct in having a suppression hearing denies him the right to have a reduction for acceptance of responsibility. |
|                | I would ask this Court - - I know the Court has to look at pretrial conduct and statements - - I would ask the - - this Court to look at the defense offer to enter into a conditional plea, preserving only the right to have the suppression hearing. |
|                | We-- I don't recall cross-examining any witness on any issue at the bench trial, other than maybe the constitutional element.  Uh, all - - |
| Court:         | You're talking about the motion to suppress, because I don't think anything happened at the bench trial. |
| Counsel:       | I think- - well, that may be true. Uh, at the motion to suppress I did, of course, challenge the motion to suppress. |
| Court:         | I'm wrong, I think one witness was called. |

Go ahead.

Counsel:    I recall one witness, as well, perhaps two; but my recollection was that it was a very abbreviated proceeding.

We did challenge the motion to suppress. I felt it was a good faith motion; I felt there was a chance of success on it; it was certainly a warrantless arrest, uh, where there were significant constitutional issues to be - - to be had.

Uh, beyond that, I remember being prepared on that day - - and perhaps only because this is what I had done with another prosecutor in another case - - I think I had assumed that the Court would adjudicate Mr. Davis guilty on that date.

And I recall having some conversation when the Court set a date for a trial. Uh, it was never my anticipation to make, you know, [the prosecutor] pull in new witnesses.

I understand there may have been some evidence that we hadn't put on at the bench trial that was needed to obtain the conviction - - or at the suppression hearing that was needed to obtain the conviction.

But our conduct throughout this case, our hope was only to exercise the Fourth Amendment right to the motion to suppress, and then to preserve that right for appeal.

18

We did not substantially - - I don't recall ever substantially challenging the factual elements of guilt.   It was only the Fourth Amendment issue and the constitutional issue with respect to the commerce clause.

Uh, I believe, therefore, the only difference between [the prosecutor], uh, and somebody who pled - - or, I'm sorry - - between Mr. Davis and somebody who pled guilty to this offense is the fact that he exercised his right to have a suppression hearing.   And I do believe that there will be a significant due process problem if he were denied the benefit of acceptance of responsibility in that case.

Uh, I - - I put in - - a little bit about the United States Supreme Court case of the United States versus Jackson, uh, in my sentencing memorandum.   That case obviously is not on point, it involved the death penalty statute. But I think the Court very clearly said you can't have a benefit going to a person simply because they're willing to waive their right to a jury trial.   You would have a serious Fifth and Six [sic] Amendment problem if that were the case.

Uh, I - - Mr. Davis is free to answer this Court's questions, if that would, uh, make a difference.   I notice - - I cited an Eleventh Circuit case where a defendant in fact exercised her right to have a full trial.   Uh, she went to trial, she put

19

the Government to its burden of proof, she called a jury, she contested evidence, she cross-examined witnesses.

After the trial her lawyer - - the defendant was apparently very moved and in tears, and her lawyer read a written statement where the defendant acknowledged her mistakes. And the District Court found that the defendant had accepted - - expressed remorse and accepted responsibility, and the Eleventh Circuit upheld that.

So, even where a defendant does exercise constitutional rights to trial, this Court has the discretion to award acceptance. It was always our intent to proceed as we did. We never wanted a trial. Mr. Davis never said that the - - the gun wasn't in his pocket after his arrest, of course.

Uh, and we've substantially saved the Government its burden of proof, uh, its expense of calling a trial. I've had change of plea hearings that lasted longer that the bench trial we had in this case.

Court:               I have too.

Counsel:             So, I - - I would submit to the Court, respectfully, that to deny acceptance of responsibility in this case would raise the specter of a significant due process concern because it could only be based on Mr. Davis's exercise of his Fourth Amendment right to a suppression hearing.

20

Court:                    Well, you know - - and I'm going to
                          let [the prosecutor] address this - -
                          but I don't agree with - - with your
                          argument that it can only be based
                          on that, because there are
                          other - - other things that the
                          guidelines under these
                          circumstances suggest that I
                          should look at.  And one of them,
                          as I have said, is his pretrial
                          conduct as far as acceptance, and
                          there was no pretrial conduct, at
                          least initially, regarding
                          acceptance.

                          And - - and frankly, your analogy to
                          the defendant who - - where the
                          attorney read a statement, I will
                          repeat for probably the third time,
                          I've never heard Mr. Davis say
                          anything regarding his acceptance
                          or regarding remorse or anything
                          else.

                          So, I mean, I realize that you said
                          this in your sentencing
                          memorandum on his behalf, and
                          you said it in the Presentence
                          Report, but - - or to the probation
                          officer, and he put it in the
                          Presentence Report.  But with that
                          said, let me just see what the
                          Government's position is.

                          [Prosecutor], there's no doubt, and
                          I don't disagree that this was an
                          extremely short trial, probably the
                          shortest trial I've ever had, and 30
                          minutes, maybe, might be a good
                          estimate.

                          Now, the motion to suppress
                          hearing lasted considerably longer,
                          but the non-jury trial itself, because
                          the decision was made I believe

on - - at least I was informed on the morning of trial, I don't know when it was actually made - - to rely on the evidence that was presented in the motion to suppress, it was very short. I don't disagree with that.

And I don't disagree with what you've said that you had offered to plead guilty if the Government would agree to reserving the right to appeal, I guess, my ruling on the - - both motions, the motion to dismiss and the motion to suppress. So, I don't - - I certainly don't disagree with any of that.

[Prosecutor], what is your position on - - then on the two levels? Because I haven't heard you moving for an additional level. So, let's just talk about that two levels.

Prosecutor:          I'm totally opposed to it. I don't - - I don't credit any of the arguments made by defense counsel.

This case is very simple, Judge. Uh, he had an opportunity at pretrial to - - to work out a deal. Uh, that didn't work because he wanted a conditional plea, which we don't do.

The issue of due process, I think, is a red herring. Uh, if he - - just because he wanted a suppression hearing would no way, in my mind as a 15-year prosecutor, preclude him from getting acceptance if he had pleaded guilty following losing the suppression hearing.

If he had pleaded guilty to the charge following losing the suppression issue, I would support a two-level downward departure. He did not do that.

The fact that the trial was short to me is also irrelevant. You and I have tried felon is possession cases from soup to nuts with a jury in less than a day.

Uh, the fact that the suppression hearing put in all but one essential element of the case in chief, uh, augured for the short trial where we had to prove the interstate nexus issue. That was the only witness that was called by - -

Court:                I couldn't remember, I - -

Prosecutor:        Yes. That was the issue. It was a DATFE agent to put the final nail in the coffin. So, to me, there is no due process issue. The man has never accepted responsibility. He could have at the close of the suppression hearing when he lost. He chose to put the Government to its proof, and therefore is precluded from obtaining the acceptance.

The case, I believe, that [defense counsel] cited is the De La Rosa case - -

Court:                That's one of them.

Prosecutor:        Yes, in which a court, uh, at post-trial gave a defendant a reduction. However, that case is distinguishable from the present case because in that instance the

defendant, as clearly pointed out toward the end of the case, had cooperated and greatly assisted the Government.

And so the Court, using its broad discretion, as this Court has - - all Courts have - - based on the fact that the defendant has greatly cooperated and assisted the United States and then somehow went to trial, the Judge decided in his or her discretion to grant the - - that, uh, two-level down.

There's been no cooperation, uh, with this defendant, so that case is distinguishable here.

The facts are very simple.  He has never admitted his guilt, except after he was convicted.  And to me, that is completely irrelevant.  Once you're convicted, so what?

Court:    [Prosecutor], could I go back, because the advisory guidelines suggest under certain circumstances that you look at other things, like pretrial conduct and statements.

Now, you've addressed the fact that there was not any cooperation, and I said I recalled the fact that he was violent in the arrest, and then denied having the firearm stating that it was a pill bottle.

But - - and I just can't remember, what is your recollection of the testimony?  I can recall there being an issue about the ID.  What is

your recollection of the testimony regarding the identification?

Prosecutor:   My recollection from a discussion - - the discussion with my officers and, uh, the trial testimony was that he, uh, provided false identification at the time of his arrest, which is an additional aggravating factor with respect to his pretrial conduct.

And he - - he resisted quite violently, Your Honor. It took four police officers to subdue Mr. Davis, who is not a huge man.[7]

. . .

(CR Dkt. 56, pp. 10-28).

After further argument from counsel, Davis addressed the Court, in relevant part, as follows:

Davis:   . . . Uh, Your Honor, sitting back through this ordeal from beginning to where I stand now, I haven't said much of anything. I tried to do what the - - what everybody tells me to do, and that's to be quiet and let my attorney speak.

As far as me making any statements, as far as towards my acceptance of responsibility, from the beginning I've always told - - from the detectives that - - that I was in possession of the firearm to where I'm at now. I've never denied having

---

[7] Testimony adduced at the suppression hearing revealed that several law enforcement officers had to subdue Davis and that pepper spray was used during the officers' struggle with Davis. (CR Dkt. 55, pp. 31-33).

possession of the firearm or having possession of the pill bottle that was also in my pocket.

Uh, I've - - I've never denied being a convicted felon, I've never tried to hand the officer a fake identification.  I've been honest with him from beginning [sic].  I did resist, and I've never denied even resisting.

Court:              You gave him a false name, as well?

Davis:              In the beginning when he pulled me over, I thought I had warrants for my arrest, and I explained that to the officer when I gave him my name - - the false name.  When he found out that - - who I was, and my name came out, and I was identified, and I found out I had no warrants out for my arrest, that - - that's why he asked me why I gave the false name, and that was the reason why.

Uh, when he seen [sic] the wallet and asked me to give him the wallet, I explained to the officer that that is not my identification and that is not my wallet; we are returning that wallet to someone that had left it in the car.

That's when the next question came, what's the bulge in your pocket?  And I explained to him it was a pill bottle.  We tried to bring the pants in on [sic] trial to show that it was five-pocket pants, and I had two front pockets, one overlapping the other, one which possessed the firearm on the

|  | bottom, and the one on top with the pill bottle. |
|--|--|
|  | When the officer asked what the bulge was, I clearly stated it was pill bottle that was the bulge. |
|  | I know this isn't the trial, and we didn't cross-examine on [sic] trial, I was under the understanding when you  - - |
| Court: | You did cross-examine at the motion to suppress, which was accepted into evidence for purposes of the trial, so that's not true. |
| Davis: | All right.  I also - - |
| Court: | You didn't testify.  Maybe that's what you meant to say. |
| Davis: | But the point I'm trying to make is that I - - from the time that I've been arrested to - - up to now, I've never denied having possession of the firearm.  I never denied being in the wrong.  I've never denied from - - from the beginning I offered to work with - - with the police.  He didn't want to hear anything, he wanted to charge me and take me to jail. |
| Court: | Who is "he," or - - |
| Davis: | That was Deputy McClusky.[8]  Uh, when [defense counsel] got assigned to my case and came to the court - - or to the jail to see me, I've never said that I wanted to go |

---

[8]  Deputy McClusky was one of the officers involved in Davis's arrest.  (CR. Dkt. 55, pp. 18-35).

27

to trial on this case.  Only when the issue about the interstate commerce clause came up is when we decided to try to reserve the right to appeal.

Hum, Your Honor, I know you look at my history, and I know it's extensive.  I know that I'm 34 years old, and I know I've been in trouble from the time I was knee high to where I'm at now.

Growing up in the situation that I was, it was always like being white and being black.  I didn't get accepted by the whites, I didn't get accepted by the blacks, but I got accepted in the drugs.  So, that's where my life took me, was - - was using and - - and - - and dealing in drugs.

. . .

Court:     Okay.  I want to go back to something else you said. You said that you don't deny - - and I'm sorry, I'm not - - I may not have used the words you used, I can't say what - - I can't recall whether you said resisting arrest or being violent  at  the  time  of arrest - - whatever words you used - - why was that?

Davis:     Why did I resist arrest?

Court:     Yes.

Davis:     I guess part of it was not believing that  it  was  - -  that  it  was happening,  that  I  was  being arrested.   So  shortly from - - compared to the way

28

everything else was going, being homeless, trying to - - being high; I mean, trying - - just not believing that it was happening, I guess, to an extent.

I mean, I don't know exactly why. I was scared, nervous, I didn't  - - I guess I didn't want to go to jail, the big part of it is.

Court:    Okay.   Probably not a good answer for that.  I just thought I would ask since you said you admitted to that.

. . .

Court:    Okay.  All right.   Anyone have anything else?

Counsel:    Your Honor, I'd just like to put one point out further. [The prosecutor] indicated that Mr. Davis has not cooperated with the Government so far, and that is true.  That is partially my fault.

Mr.   Davis   has   given   me information that I've related to [the prosecutor] that he's interested in providing in the future, uh, but because of the nature of the information I have moved very slowly with it.

[The prosecutor] has agreed to give me a proffer letter, and there may be some cooperation in the future, uh, that Mr. Davis is amendable to providing. But it was my decision to, uh, move slowly and make sure that I had all the facts correct on this situation,

|              | And quite frankly, I hadn't considered that in the calculous of acceptance of responsibility. Uh, so, I just wanted to clarify for [sic] that. |
|--------------|---------------------------------------------------|

. . .

| Prosecutor: | First of all, uh, I believe the testimony at trial from Officer McClusky was that Mr. Davis gave him a false exculpatory statement saying that the gun had just been handed to him by the driver of the vehicle as the police approached. |
|-------------|---|
|             | Secondly, uh, he's told you he's always felt that he was guilty and everything, but he never, uh, told me or you, and took us to trial. And - - and again, that suppression issue is irrelevant. He had a perfect right to seek that suppression issue. And if he had pled guilty and owned up to his conduct, I would have no problem, uh, as a matter of principle by letting him have the two levels. |
|             | He chose not to do that. He chose to proceed to trial. A trial is trial. And, uh, a trial is necessary when someone denies the truth of the allegations contained in the Indictment. |
|             | So, he has not accepted responsibility and doesn't deserve it. Thank you. |

| Court:   | Okay. |
|----------|-------|

| Counsel: | May I briefly, respond, Your Honor? |
|----------|-------------------------------------|

Court:          Sure.

Counsel:        I just would like to cite on that. Uh,
                again, I would like to stress that,
                uh, I would like the Court to
                consider our willingness and our
                offer to enter into a conditional
                plea, reserving only the right to
                appeal as a manifestation of an
                admission of guilt implicitly.

                We clearly would not be here
                today if the United States
                Attorney's Office in this District
                allowed defendants to plead guilty
                and reserve the right to appeal.

                In United States versus Rodriguez,
                uh, 959 F.2d 193, the Eleventh
                Circuit vacated a sentence where
                the denial of an acceptance of
                responsibility reduction was based
                on, uh, the District Court's
                consideration of the appellant's
                exercise of their right to appeal.

                Now, admittedly that was under, I
                think, a different 3E1.1 than we
                have right now, uh, but the
                Eleventh Circuit very clearly stated
                the Sentencing Court cannot
                consider against a defendant any
                constitutionally-protected conduct.

                And the conduct in that case was
                the right to appeal. Mr. Davis's
                reservation of his right to appeal is
                the only reason why we did not
                enter into a guilty plea in this case.
                And I believe his conduct is
                consistent with that.

                So, I would like the Court to award
                acceptance of responsibility.

Court:      Okay.  You know, I can envision circumstances where - - where even - - even putting aside [the prosecutor's] scenario about him having the right, he could have pled guilty after my ruling on the motion to suppress, or the motion to dismiss, I can envision circumstances where you can reserve your right to appeal and get acceptance of responsibility.

And - - but this is not a circumstance like that.  I mean, he - - he does not - - if I look at his - - the advisory guidelines suggest that I then in - - under certain circumstances - - or those circumstances I need to look at other things to determine whether he's accepted responsibility primarily upon his - - any pretrial statements and conduct.

And, you know, at the scene he lied about his name, he resisted arrest, and [counsel], it wasn't until after today that I've heard anything from him about remorse or acceptance of responsibility.

So, you know, this is just not such a case.

And I'm sorry, Mr. Davis, but I don't believe that you have accepted responsibility.  And I agree with the probation officer and the Government on this, that, you know, I don't think that to come in and say it just so that you can get the two levels is what is envisioned by this.

I need to look at the total circumstances. And if I look at the total circumstances, considering all your other conduct, I don't think you accepted responsibility. You attempted to distance yourself until such time as you got caught and couldn't do it.

So I'm not going to give you acceptance of responsibility, and I'll overrule the - - I will overrule the objection and consider the - - consider the guidelines, as the probation officer has suggested that I consider them.

And Mr. Davis, you know, part of why you are here is because you have such a bad criminal record, and - - and I - - I guess what you have told me earlier, it's all based on your doing things to get money for drugs. I'm not sure. Is that what you're suggesting?

Davis:           Yes, Your Honor.

Court:           Okay.

(CR Dkt. 56, pp. 33-36, 40-46).[9]

Davis did not advise the Court at either the suppression hearing or the sentencing hearing that trial counsel had made him any guarantee that he would receive an offense level reduction for acceptance of responsibility. Davis premises his claim for relief on the assumption that by pleading guilty, he would have received the two-level reduction for acceptance of responsibility. This speculative assertion fails to establish a constitutional

---

[9] The Eleventh Circuit affirmed on appeal the denial of the two-level reduction for acceptance of responsibility. *United States v. Davis*, 175 Fed. Appx. 286, 289 (11th Cir. 2006).

violation and is undermined by the fact that Davis did not express remorse or manifest any acceptance of responsibility for his conduct until sentencing.  *See* U.S.S.G.3E1.1(a), cmt. n. 2.[10]

Although a reduction for acceptance of responsibility is typical when a defendant pleads guilty, it is not an automatic entitlement.  *See* U.S.S.G. § 3E1.1, cmt. n. 3; *United States v. Wade*, 458 F.3d 1273, 1279 (11th Cir. 2006).  Davis fails to fails to address any of the considerations enumerated in the commentary to U.S.S.G. § 3E1.1.  Based on his pretrial conduct and despite any alleged deficient performance by counsel, Davis fails to show that if he had pled guilty, he would have received the two-level reduction or that his sentence would have been any different.  Consequently, Davis cannot demonstrate the requisite prejudice to establish a claim of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. at 691-92, 694.  This claim warrants no relief.

CLAIMS B AND C

In the remaining allegations presented in Ground One, Davis alleges two claims of ineffective assistance of counsel.  Specifically, Davis alleges that trial counsel rendered ineffective assistance by terminating Davis's presentence investigation interview while knowing that Davis sought a two-level reduction for acceptance of responsibility (claim B)

---

[10]  Comment 2 to U.S.S.G. § 3E1.1 provides:

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

and by failing to inform Davis that she [counsel] was acting in a manner inconsistent with Davis's interests (claim C).  In its response (CV Dkt. 13), the Government argues that these claims are not properly before the Court because they were untimely filed and do not relate back to Davis's timely original motion to vacate (CV Dkt. 1).

Davis's conviction became final on October 30, 2006, when the United States Supreme Court denied his petition for writ of certiorari.  *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001).  Thus, Davis had one year from that date, until October 30, 2007, to file a timely Section 2255 motion.[11]  Davis signed his original Section 2255 motion on October 25, 2007, and the Court received motion on October 29, 2007. (CV Dkts. 1, 2).  Thus, the original motion was timely filed.  To the extent that Davis realleges in the instant amended motion claims presented in his original motion, the claims are timely.[12]  Davis did not file his amended motion until January 7, 2008.  (CV Dkt. 8). Davis failed to present claims B and C of his amended motion in his original Section 2255 motion.  Consequently, these two claims are now before the Court for the first time.  These

---

[11] Section 2255 provides, in relevant part:

A 1-year limitations period shall apply to a motion under this section.  The limitation period shall run from the latest of –
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[12]  Davis presented claim A of Ground One in his original motion and restated the same claim in the instant amended motion.  (CV Dkts, 1, 2).

claims are untimely under the one-year period of limitation and are barred unless they relate back to Davis's original motion.

"'Relation back' causes an otherwise untimely claim to be considered by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). To relate back to a timely Section 2255 motion, a subsequently presented claim must arise from the same conduct and occurrences that formed the basis of the timely asserted claims. *Davenport v. United States*, 217 F.3d at 1346). *See also* Fed. R. Civ. Proc. 15(c).[13] "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport v. United States*, 217 F.3d at 1344 (citations omitted).

The allegations of ineffective assistance presented in claims B and C do not relate back to Davis's original claims of ineffective assistance of counsel presented in his original motion. To the extent that claims B and C relate to similar conduct by counsel alleged by Davis in claim A of Ground One, *supra*, the Court cannot find that claims B and C relate back to that conduct so as to deem claims B and C timely. The conduct alleged in claim A of Davis's amended Section 2255 motion occurred pre-trial. Counsel's conduct alleged in claims B (counsel's alleged post-trial restriction on Davis's presentence investigation interview) and C (counsel's alleged post-trial failure to allow Davis to answer questions to law enforcement) occurred after Davis's bench trial. Claims B and C are separate

---

[13] Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Proc. 15(c)(2).

occurrences in both time and type from counsel's pre-trial advice to proceed to a bench trial (claim A).   *See Davenport v. United States*, 217 F.3d at 1344-45; *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).   Accordingly, claims B and C of the amended motion to vacate do not arise from the same conduct and occurrence that formed the basis of the timely asserted claims in the original motion to vacate.[14]   Claims B and C are therefore time barred and warrant no relief.[15]

Accordingly, the Court orders:

That Davis's amended Section 2255 motion to vacate (CR Dkt. 72, CV Dkt. 8) is denied.   The Clerk is directed to enter judgment against Davis in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that defendant is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district

---

[14] Although the Court directed Davis to file an amended motion to vacate that included "all of Defendant's claims in this action" (CV Dkt. 5), the Court did not grant Davis an opportunity to file a new motion to vacate with claims not previously asserted in his original motion.   Rather, the Court afforded Davis an opportunity to fully develop the claims he raised in the original motion.

[15] Davis also presents as Ground Two of his amended motion a claim that his federal sentence was enhanced by an unconstitutionally obtained state conviction for aggravated assault.   Davis claims that he commenced state post-conviction proceedings challenging the constitutionality of this conviction, which proceedings were pending when he filed his amended Section 2255 motion.   As of the date of this order, those proceedings are still pending.   *See* online docket for the Clerk of Court, Manatee County, Florida at:   http://www.manateeclerk.org/PublicRecords/CourtRecords/tabid/58/ctl/detail/mid/380/cid/FkeSV87cO0 bHtbLwZD3X2w/Default.aspx.   Notwithstanding, Davis did not present the claim asserted in Ground Two in his original motion to vacate.   Although Davis presented a claim of ineffective assistance based on counsel's alleged failure to investigate this prior conviction, he did not present an independent claim arguing entitlement to resentencing if the state conviction is vacated, the claim he asserts in Ground Two.   Consequently, Ground Two does not relate back to Davis's original motion to vacate and is untimely.   Ground Two warrants no relief.

court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 18, 2008.


SUSAN C. BUCKLEW
United States District Judge


Counsel of Record
Samuel Davis, Jr.

38