UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMUEL DAVIS, JR.,

    Petitioner.

v.                                            Case No.  8:07–cv–1961–T–24–TGW
                                                                            8:04–cr–0546–T–24–TGW

UNITED STATES OF AMERICA,

    Respondent.
_____/

**O R D E R**

This cause comes before the Court on remand from the U.S. Court of Appeals for the Eleventh Circuit. (Civil Doc. 25.) Davis v. United States, 335 F. App'x 825, 2009 WL 1598433 (11th Cir. 2009).

The Eleventh Circuit vacated this Court's order and judgment denying Petitioner Samuel Davis, Jr.'s motion pursuant to 28 U.S.C. § 2255 to correct his allegedly illegal sentence. (Civ. Docs. 17, 18.) On remand, the Eleventh Circuit directed the Court to determine if the facts alleged in Davis' motion claiming a Sixth Amendment violation for ineffective assistance of counsel warrant relief under Hill v. Lockhart, 474 U.S. 52 (1985). If the Court determined that the facts as alleged warranted relief, then the Eleventh Circuit directed the Court to hold an evidentiary hearing. Because the Court in its previous order did not address its analysis of the second prong of Hill, the Eleventh Circuit also directed the Court to determine whether under the second prong of Hill "there is a reasonable probability that, but for counsel's errors, [Davis]

1

would . . . have pleaded guilty and would [not] have insisted on going to trial." Davis, 335 F. App'x at 825 (quoting Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) and Hill, 474 U.S. at 59).

In his amended motion, Davis alleges he was denied his Sixth Amendment right to effective assistance of counsel because his attorney explicitly guaranteed that even if he pled not guilty, proceeded to a bench trial, and was found guilty, the Court would nevertheless award him a two-level reduction for acceptance of responsibility under U.S. Sentencing Guideline §3E1.1 at sentencing. (Civ. Doc. 8.) Davis also alleged that his counsel's explicit guarantee and advice caused him to maintain his not guilty plea and proceed to a bench trial. Id. at 7.

Because this Court determined that Davis' allegations, if true, could warrant relief under Hill, it appointed counsel for Davis and conducted an evidentiary hearing on December 21, 2009. (Civ. Doc. 34.) At the hearing, the Court heard testimony from Davis and his trial counsel, Tracy Michelle Dreispul, a former assistant federal public defender in the Middle District of Florida. The assistant United States Attorney who had handled the case at trial is deceased and was therefore unable to testify.

After considering the testimony of the witnesses at the evidentiary hearing, and reviewing the record including the transcripts of the previous hearings, the Court finds that Dreispul's advice, in fact, caused Davis to maintain his not guilty plea, and that, but for his attorney's advice, Davis would have pled guilty and relinquished his right to a trial and appeal. However, the Court further finds that Dreispul's actions and advice, although in hindsight not the best, did not fall below the norms of "professionally competent assistance," and therefore was not deficient for constitutional purposes under the Sixth Amendment. Strickland v. Washington,

466 U.S. 668, 686-96 (1984). Therefore, the Court again denies Davis's motion for relief under 28 U.S.C. §2255.

## BACKGROUND

On September 5, 2004, Manatee County sheriff's deputies responded to a 911 call about a burglary in progress at the Aloha Estates Trailer Park in Bradenton, Florida. (Criminal Doc. 55 at 13-23.) After arriving at the park, Deputy Michael McClusky observed a silver Honda parked in front of the trailer where the burglary had allegedly taken place. The deputy approached the car and asked the passenger for identification. Davis, who was seated in the passenger seat of the car, told the deputy that his name was Jose Ortiz. At the deputy's request, Davis produced a Florida ID that Davis acknowledged belonged to another person. Id.

At that point, the deputy noticed that Davis had something in his pocket that looked like a gun. When the deputy asked Davis what he had in his pocket, Davis said he had a pill bottle. Id. After Davis reached for his pocket, the deputy pulled Davis out of the car and ordered Davis to keep his hands in the air. Id. Davis resisted, and it took three deputies and pepper spray to subdue him. After finally handcuffing Davis, deputies found in Davis' pocket a stolen Bryco .380 caliber semi-automatic pistol. Deputies also found in Davis' pockets a pill bottle containing narcotics, an Excedrin bottle containing crack cocaine, and a glass pipe.

On November 9, 2004, a grand jury returned an indictment against Davis on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Cr. Doc. 11.) Davis entered a not guilty plea and was appointed counsel.

On December 15, 2004, at the first criminal status conference in the case, Tracy Dreispul, Davis's court appointed counsel, told the Court that she intended to file a motion to dismiss and

3

a motion to suppress evidence. (Cr. Doc. 53 at 2-3.) However, if Davis lost those motions, Dreispul said Davis would agree to a stipulated bench trial where Davis would only contest evidence about how deputies found the gun so that he could appeal those issues. Id. At the second status conference on January 19, 2005, Dreispul had filed the motion to suppress and the motion to dismiss and told the Court that in the event the motions were denied, Davis would be willing to enter a conditional plea of guilty or have a "stipulated bench trial." (Cr. Doc. 54 at 2-3.) On February 1, 2005, the Court denied Davis' motion to dismiss. On February 4, 2005, the Court held a hearing on the motion to suppress and on February 7, 2005 entered a written order denying the motion. The case was set for a bench trial.

On February 17, 2005, the Court held a bench trial. At the beginning of the trial, Dreispul announced that Davis agreed to stipulate that the evidence that the United States had presented at the suppression hearing could be used at the bench trial. (Cr. Doc. 63 at 6-8.) However, because Dreispul had not asked the Court in advance to accept the stipulation, the United States brought all its witnesses to court on the morning of trial in case the Court did not accept the stipulation. (Cr. Doc. 56 at 12.) Ultimately, the United States called only two witnesses; Dreispul cross-examined only one of the witnesses and argued briefly that the United States had not proven that the firearm affected interstate commerce. Id. at 20-23. The Court found Davis guilty as charged. (Cr. Doc. 36.) The entire trial lasted 55 minutes. (Cr. Doc. 58 at 4, 26.)

At sentencing on May 19, 2005, the pre-sentence report recommended that Davis not be given a two level reduction for acceptance of responsibility under §3E1.1 USSG. The Government agreed and argued that Davis was not entitled to a reduction for acceptance of responsibility. Davis objected to the pre-sentence report, and also filed a sentencing

4

memorandum objecting to the denial of acceptance. (Cr. Doc. 44.) The memorandum argued that the Court could not deny Davis the two-level reduction, consistent with due process, to penalize Davis for filing a motion to suppress and motion to dismiss. Id. The memorandum did not discuss Davis' pre-trial conduct. The Court denied Davis a two-level reduction under §3E1.1 USSG for acceptance of responsibility, finding that because Davis gave deputies a false name when first questioned, gave deputies a false identification card, lied about the firearm in his pocket, violently resisted arrest and had never accepted responsibility for any of the criminal conduct, he was not entitled to the acceptance reduction.[1] At sentencing, Dreispul acknowledged that she had told Davis it was her belief that he would qualify for the acceptance of responsibility reduction by proceeding the way he did. (Cr. Doc. 56 at 71.).

The Court sentenced Davis to a prison term of 235 months (19 years, 7 months). Davis appealed, and the Eleventh Circuit affirmed on direct appeal. Davis, 175 F. App'x at 290.

## EVIDENTIARY HEARING

On December 21, 2009, the Court held an evidentiary hearing on Davis's ineffective assistance of counsel claim. At the hearing, Tracy Dreispul, Davis's trial counsel, and Samuel Davis testified.

Dreispul testified that Davis first brought up the filing of a suppression motion, but as she investigated it, she believed the motion had significant merit. (Civ. Doc. 34 at 12-13).

---

[1] Under the sentencing guidelines, a court may award the reduction "in rare situations" even when the defendant insists on a trial. U.S. Sentencing Guidelines Manual §3E1.1 cmt. n.2 (2005). When a court considers granting the reduction after the defendant demands a trial, the Court's determination "will be based primarily upon pre-trial statements and conduct." Id. See Davis, 175 F. App'x at 289-90 (upholding the Court's denial because "Davis's pre-trial statements and conduct failed to demonstrate he accepted responsibility for the instant offense").

5

Dreispul filed both a motion to suppress and a motion to dismiss.  She testified that after the Court denied the motion to suppress and the motion to dismiss, she requested of the Government that Davis be allowed to enter a conditional plea of guilty preserving his right to appeal the Court's denial of the motions, but the Government would not agree to a conditional plea of guilty. Dreispul, who had been with the Federal Public Defender's Office for several years, testified that in order to preserve legal issues and specifically a suppression issue she had, in other cases, proceeded to a bench trial and believed she could proceed that way in this case without damaging Davis's eligibility to receive a reduction for acceptance of responsibility.  Id. at 13.  Dreispul said she told Davis on numerous occasions that she was "very confident" he would not jeopardize his eligibility for a two-level offense reduction for acceptance of responsibility if he proceeded to a partially stipulated bench trial.  Id. at 16-17.  At the bench trial, Davis would not contest the facts charged in the indictment, only the legal issues raised in the motions to suppress and dismiss. When asked if she "guaranteed" Davis the Court would award him acceptance of responsibility, Dreispul testified she told her client: "So, no, I could never 100 percent promise or 100 percent guarantee anything."  Id. at 25.  "I didn't technically promise him, but I certainly, uh, gave him as much assurance as I felt I could."  Id.

Davis, on the other hand, testified that Dreispul guaranteed he would get acceptance of responsibility and if she had not given him the guarantee, he would not have gone to trial, because he did not want to jeopardize acceptance of responsibility.  Id. at 36-37.  After the motion to suppress was denied, Davis testified he asked Dreispul if he should plead guilty, and she reiterated that as long as he didn't contest any of the facts, Davis would still get the benefit of acceptance of responsibility.  Davis stated that throughout the proceedings he wanted to plead

6

guilty even if it meant he could not appeal the Court's denial of his motions.

## ANALYSIS

**I.**     **Davis Was Not Denied Effective Assistance of Counsel Under the Sixth Amendment**

In order for Davis to establish a Sixth Amendment violation of the right to effective assistance of counsel, Davis must establish (1) that his counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) that there is a reasonable probability that counsel's errors affected the outcome of the plea process by causing Davis to change his plea. Hill, 474 U.S. at 58-59; see also Coulter v. Herring, 60 F.3d 1499, 1503-04 (11th Cir. 1995).[2]

A lawyer's advice is more likely to fall "outside the wide range of professionally competent assistance" not only when the advice is wrong, but also when the wrong advice jeopardizes a defendant's fundamental rights. The Eleventh Circuit has held that a lawyer could violate the Sixth Amendment guarantee of effective assistance of counsel in narrow circumstances where counsel "'has induced his client to plead guilty based on patently erroneous advice.'" Downs-Morgan v. United States, 765 F.2d 1534, 1539, 1541 (11th Cir. 1985) (quoting United States v. Rumery, 698 F.2d 764, 766 (5th Cir. 1983)).[3] See also Holmes v. United States,

---

[2] Hill largely adopted the law set out in Strickland v. Washington, 466 U.S. 668 (1984), with one exception. Hill modified Strickland's second prong and specifically required a defendant to prove that his counsel's advice caused him to change his plea. Jones v. White, 992 F.2d 1548, 1557 (11th Cir. 1993).

[3] In Downs-Morgan, the Eleventh Circuit found that a defense counsel's affirmative misstatement—not merely an omission—to his client that a guilty plea would not result in deportation could constitute ineffective assistance of counsel, depending on the totality of circumstances, where the misstatement was "patently erroneous" and caused the client to enter a guilty plea that resulted in his deportation. Id. at 1540-41.
     Unlike this case, Downs-Morgan not only dealt with a guilty plea, but it also dealt with defense counsel's misstatement about deportation, a collateral consequence of conviction, rather than an alleged misstatement about the likely length of the primary prison sentence.

7

876 F.2d 1545, 1551-53 (11th Cir. 1989);[4] Slicker v. Wainwright, 809 F.2d 768, 769-70 (11th Cir. 1987).

Unlike defendants who plead guilty based on their counsel's "patently erroneous" advice, Davis claims that his counsel's erroneous advice caused him to exercise his fundamental constitutional right to a trial and to an appeal. Unlike defendants who plead guilty, Davis lost no constitutional right by proceeding to a bench trial. Nor was he precluded from receiving a two level reduction for acceptance of responsibility under the United States Sentencing Guidelines by proceeding to trial. Application Note 2, §3E1.1 USSG, provides that in rare situations, a defendant who goes to trial may be entitled to acceptance of responsibility, for example, when a defendant goes to trial to assert and preserve issues that do not relate to factual guilt. By proceeding to a bench trial where he did not contest the facts, Davis was not necessarily disqualified from receiving the acceptance of responsibility reduction, and the Court could have credited him with it, had he clearly demonstrated acceptance of responsibility in his pre-trial statements and conduct .

**A.    Counsel's Performance Was Not Constitutionally Deficient**

In order for Davis to prove that Dreispul's performance was deficient under Hill's first prong, Davis must show that Dreispul "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Dreispul's advice must have fallen below "an objective standard of reasonableness," and her advice "in light of all the circumstances" must fall "outside the wide range of professionally competent

---

[4] In Holmes, the Eleventh Circuit ordered an evidentiary hearing on the Sixth Amendment claim because the court found the defendant could state a claim if his attorney "grossly misinformed" him about the parole consequences of pleading guilty. Holmes, 876 F.2d at 1553.

assistance." Id. at 688, 690.

Judicial scrutiny of counsel performance must be highly deferential because a defendant can be tempted to second-guess counsel's assistance after an adverse sentence. Therefore, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. Furthermore, the reasonableness of an attorney's performance should be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Id. at 690.

1. *Dreispul Did Not Explicitly "Guarantee" Davis that the Court Would Award Him a Two-Level Offense Reduction for Acceptance of Responsibility*

Defense attorneys should never guarantee a client a result in a criminal case. Making such a promise constitutes a false promise and "patently erroneous advice" because even the most prescient attorney cannot know how a Court will rule, particularly at a criminal sentencing where judges exercise broad discretion. Such "patently erroneous advice" could, given the circumstances, constitute deficient performance. See Downs-Morgan, 765 F.2d at 1539 (quoting Rumery, 698 F.2d at 766).

However, the Court after weighing the testimony of Dreispul and Davis at the evidentiary hearing, finds that Dreispul did not make such a promise or guarantee to Davis. Although Davis testified that Dreispul made him an explicit guarantee that he would receive an acceptance of responsibility reduction (Civ. Doc. 34 at 37-38), Dreispul testified that she did not guarantee or promise Davis any result, even though she came close to doing so. ("So no, I didn't technically promise him, but I certainly, uh, gave him as much assurances as I felt I could.") Id. at 25. The

9

Court finds Dreispul's testimony on this issue more credible than that of Davis. Davis, who has a lengthy criminal record, made false pre-trial statements to law enforcement in this case. In addition, Davis has an obvious interest in the outcome of this case, whereas Dreispul does not.

2. *Dreispul Did Not Misinform Davis About the Law*

At the evidentiary hearing, Dreispul repeatedly testified that she was "very confident that by proceeding that way, [Davis] would be ***eligible*** for acceptance of responsibility."[5] (Civ. Doc. 34 at 16) (emphasis added). Dreispul's advice was correct. Davis was eligible for the acceptance of responsibility reduction. To the extent that Dreispul advised Davis only that he would be eligible for the reduction, Dreispul committed no error. She was right, had Davis's conduct and statements evidenced acceptance of responsibility, the fact that he proceeded by way of a bench trial in which he contested only certain legal issues rather than the facts would not have precluded him from the two-level reduction.

3. *Dreispul's Performance Did Not Fall Below "An Objective Standard of Reasonableness"*

Dreispul should have considered Davis's pretrial conduct when evaluating the likelihood that he would receive an acceptance of responsibility reduction. Dreispul clearly knew the law and was familiar with application note two to the commentary of U.S. Sentencing Guideline §3E1.1, that the Court's determination of an acceptance of responsibility reduction would include

---

[5] Throughout her testimony, Dreispul referred to Davis' eligibility, rather than entitlement, to the reduction. For example, on page 13 of the transcript of the evidentiary hearing, Dreispul said: "I believed we could proceed that way in this case, uh, without damaging his, uh, eligibility to receive an acceptance of responsibility reduction." On page 14-15: "I believed and I advised him very strongly that I believed he would be eligible for a two-level acceptance of responsibility by proceeding in the manner that we did." Even after the Probation Officer asked Dreispul how she was going to get the acceptance of responsibility reduction for Davis, Dreispul said she responded: "[W]e've qualified for acceptance." (Civ. Doc. 34 at 18-19.)

10

an evaluation of Davis' pre-trial conduct. Dreispul acknowledged that she knew Davis had lied to police, resisted arrest, and lied about a firearm in his pocket. Id. at 26-27. However, Dreispul failed to recognize the legal significance of these facts. "I don't think I had actually considered that [pre-trial conduct] as a factor until we got to the sentencing hearing," Dreispul testified. Id. at 26. "I did not foresee that would be a factor." Id. at 31. In addition, Dreispul should not have been so confident that the Court would award acceptance of responsibility merely because Davis proceeded by way of a stipulated bench trial rather than a jury trial. However, these errors do not bring her representation of Davis below "an objective standard of reasonableness" and in light of all the circumstances, her representation of Davis does not fall "outside the wide range of professionally competent assistance" such that she "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 688, 690, 687.

  **B.  Counsel's Advice Caused Davis to Plead Not Guilty Rather Than Guilty**

Under the second prong of Hill, Davis must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pled [not] guilty and would [not] have insisted on going to trial." Hill, 474 U.S. at 59.

Dreispul testified that from the start of the case, Davis wanted to plead guilty to secure the acceptance of responsibility reduction. "He never wanted a trial," Dreispul testified. "He told me that from the beginning." (Civ. Doc. 34 at 14.) Dreispul's testimony is consistent with her statements during the two status conferences early in the criminal case. (Cr. Docs. 53, 54.) Dreispul testified that "there was no doubt in my mind that Mr. Davis was proceeding based on my advice." Id. at 21.

Based on Dreispul's testimony, the Court finds that but for her advice, Davis would have

11

entered a guilty plea after the Court denied his motion to suppress and motion to dismiss. However, the Court further finds that the advice was not constitutionally deficient.

### C. Prejudice

In Hill, as in most ineffective assistance of counsel claims, a change of plea from not guilty to guilty may itself cause prejudice. By pleading guilty, the defendant relinquishes core constitutional rights, including the right to a trial, the right to confront witnesses against him, and the right to an appeal. Therefore, the determination that "but for counsel's errors, [the defendant] would not have plead guilty and would have insisted on going to trial" ends the prejudice inquiry.

In this case, however, the Court cannot simply find prejudice because Dreispul's advice caused Davis to plead not guilty. The prejudice inquiry in Hill and Strickland rests implicitly on the assumption that an attorney's deficient performance materially harms the defendant and alters the outcome of the case. Strickland, 466 U.S. at 691-92. In this case, there is a reasonable probability that the Court would have denied Davis the two-level reduction for acceptance of responsibility even if he had pled guilty.

In his amended motion, Davis argues that the Court stated at sentencing that it would have found that he accepted responsibility for his crime if he plead guilty from the start. Davis cites to the following exchange at the sentencing hearing:

> MS. DREISPUL: Uh, however, if he had come in and pled guilty, uh, routinely we see this happen with – defendants who maybe resist a little bit, or don't come forward straight away the night of the arrest, give a false statement – come into court, plead guilty, and they get the reduction for acceptance of responsibility.
>
> THE COURT: No, no doubt about it.

(Cr. Doc. 56 at 20.) However, as the Eleventh Circuit noted, the Court later clarified its remark.

The Court stated that it would consider granting the reduction to someone in Davis' position, if he had mitigated his pre-trial conduct by cooperating with the government, as occurred, for example, in United States v. De la Rosa, 922 F.2d 675, 680 (11th Cir. 1991). (Cr. Doc. 56 at 29-30).

Even if the Court concluded that Davis should have received the two-level reduction for acceptance of responsibility, its prejudice inquiry would not end. An award of the acceptance of responsibility reduction would only alter the range of imprisonment that Davis faced under the advisory guidelines. Even with the acceptance of responsibility reduction, he could have been sentenced to the same term of 235 months in prison that the Court imposed. With the two level reduction for acceptance of responsibility, the total offense level would become a 31, criminal history category VI, and Davis would have faced a range of imprisonment between 188 and 235 months. For the same reasons that the Court found a 235-month prison term to be a sufficient but not greater than necessary sentence, it is probable, if not likely, that the Court would have reached the same conclusion, even though the sentence would have been at the top of the advisory guidelines. Davis had an extensive criminal history; his crime involved a firearm; and Davis violently resisted arrest, putting the safety of law enforcement officers at risk. In fact, the United States requested a maximum guideline sentence in Davis' case. "[H]e is an armed career criminal," the assistant United States Attorney told the Court. (Cr. Doc. 56 at 66.) "He's a street thug. . . . We don't need him on the streets doing more violence. . . ." Id. Therefore, Davis cannot establish that his counsel's advice caused prejudice, because he cannot establish that it altered the ultimate sentence in his case.

## CONCLUSION

The Court finds that counsel's advice caused Davis to plead not guilty rather than guilty. However the Court further finds that Davis's counsel's advice was not ineffective under the Strickland standard. Counsel did not "guarantee" or "promise" that Davis could plead not guilty and still get acceptance of responsibility. She did advise Davis based on her experience with the Court in other cases and on what she believed §3E1.1, USSG, allowed, that by maintaining a not guilty plea, proceeding to a bench trial in which the facts were not contested, he could preserve his right to appeal and still be "eligible" to receive a reduction for acceptance of responsibility. That advice was not erroneous and "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). Furthermore, even if Davis had pled guilty, there is a good probability that the Court would have given him the same sentence because of his pretrial conduct. Therefore, Davis has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.

Accordingly, Samuel Davis's §2255 motion is **DENIED**. The Clerk is directed to enter judgment against Davis and for the United States and to close the civil case.

**ORDERED** in chambers at Tampa, Florida, this 10th day of February, 2010.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge